# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

ANTHONY D. McMILLIAN, Sr.,                    :

    Plaintiff,                                  :

v.                                            :            CA 11-00545-C

MICHAEL J. ASTRUE,
Commissioner of Social Security,              :

    Defendant.                                  :

## MEMORANDUM OPINION AND ORDER

The plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB").   The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court.   (*See* Doc. 15 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").)   Upon consideration of the administrative record ("R.") (Doc. 10), the plaintiff's brief (Doc. 11), the Commissioner's brief (Doc. 12), and the arguments made by the parties at the March 28, 2012 Hearing, it is determined that the Commissioner's decision denying the plaintiff benefits should be **affirmed**.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals.   (*See* Doc. 15 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

**Relevant Background**

On March 19, 2008, the plaintiff filed an application for DIB (R. 61, 102-11), alleging disability beginning March 12, 2008 due to arthritis, sarcodosis, high blood pressure, depression, anxiety, insomnia, reflux, cholesterol, lytic lesions on his skull, osteoarthritis, back pain, and fibromyalgia.  (*See* R. 123.)   His application was initially denied on July 22, 2008.  (*See* R. 61-67.)   A hearing was then conducted before an Administrative Law Judge on November 3, 2009 (*see* R. 32-60).   On November 13, 2009, the ALJ issued a decision finding that the claimant was not disabled (R. 13-31), and the plaintiff sought review from the Appeals Council.  The Appeals Council declined to review the ALJ's determination on April 28, 2011 (*see* R. 1-6)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on September 21, 2011 (*see* Doc. 1).

**Standard of Review**

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work.   *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history.   *Id.*   Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age,

education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  Although at the fourth step "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."  *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).   And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence."   *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

3

**Discussion**

On appeal to this Court, the plaintiff contends that, after rejecting the opinions of the plaintiff's treating or examining medical sources for reasons that "fall far short of being either legally adequate or persuasive" (Doc. 11 at 8), the ALJ rendered a residual functional capacity assessment (the "RFC") that is not supported by substantial evidence.[2]   The plaintiff further asserts that the ALJ failed to adequately develop the administrative record by failing to order a consultative examination after she rejected the medical source opinions.[3]

Prior to considering the specific issues raised on appeal, it is necessary for the Court to set forth the proper analysis for consideration of RFC "issues" raised in cases like the instant one, given the Commissioner's consistent stance in numerous cases

---

[2]      Stated succinctly,

[w]hen a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.   When, however, the record contains well supported contradictory evidence, the treating physician's opinion is just one more piece of evidence for the administrative law judge to weigh, taking into consideration the various factors listed in the regulation.   These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.   An administrative law judge must provide good reasons for the weight he gives a treating source opinion, and must base his decision on substantial evidence and not mere speculation.

*Brihn v. Astrue*, 582 F. Supp. 2d 1088, 1100-01 (W.D. Wis. 2008) (citing 20 C.F.R. § 404.1527(d)(2); other citations and quotation marks omitted).

[3]      Because the Court concludes that the ALJ's RFC is supported by substantial evidence, this alternative ground for remand necessarily fails.

presently pending before this Court that in past cases this Court has conflated the fourth and fifth steps of the sequential evaluation process with respect to who has the burden of developing the evidence necessary to determine RFC.   (*See* Doc. 12 at 11-14.)

  A. The RFC Assessment.

  The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms."   *Peeler v. Astrue*, 400 Fed. App'x 492, 493 n.2 (11th Cir. Oct. 15, 2010) (per curiam) (citing 20 C.F.R. § 416.945(a)).   Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'"   *Hanna v. Astrue*, 395 Fed. App'x 634, 635 (11th Cir. Sept. 9, 2010) (per curiam) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004)).   "In making an RFC determination, the ALJ must consider the record evidence, including evidence of non-severe impairments."   *Id.* (citation omitted); *compare* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."), *with* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all the relevant medical and other evidence.").

  From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC—a deep-seated principle of Social Security law, *see* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level under   § 416.1429 or at the Appeals Council review level under § 416.1467, the administrative law judge or the

administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."), that this Court has never taken issue with.   *See, e.g., Hunington ex rel. Hunington v. Astrue*, No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned).   The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources.   20 C.F.R. § 416.945(a)(3).   In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]"   *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section."   20 C.F.R. § 416.945(a)(4).

> (b)   *Physical abilities.*   When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis.   A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including

manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

(c)   *Mental abilities.*   When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.   A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work-setting, may reduce your ability to do past work and other work.

(d)   *Other abilities affected by impairment(s).*   Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities.   If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. § 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence.   *Compare Figgs v. Astrue*, No. 5:10–cv–478–Oc–18TBS, 2011 WL 5357907, at *1-2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved*, 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011),   *and Scott v. Astrue*, No. CV 110–052, 2011 WL 2469832, at *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted*, 2011 WL 2461931 (S.D. Ga. June 17, 2011), *with Green v. Social Sec. Admin.*, 223 Fed. App'x 915, 923-24 (11th Cir. May 2, 2007) (per

7

curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work.").   And while, as explained in *Green*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's decision to give less than controlling weight to such an opinion,[4]   223 Fed. App'x at 923-24; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those

---

[4]     An ALJ's articulation of reasons for giving less than controlling weight to a treating source's RFC assessment must, of course, be supported by substantial evidence.  *See, e.g., Gilabert v. Commissioner of Soc. Sec.*, 396 Fed. App'x 652, 655 (11th Cir. Sept. 21, 2010) (per cuiam) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.   In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Soc. Sec. Admin.*, 389 Fed. App'x 944, 947-48 (11th Cir. July 28, 2010) (per curiam) (same).

courts—including this one—that have staked the position that the ALJ must link the RFC

assessment to specific evidence in the record bearing upon the claimant's ability to

perform the physical, mental, sensory, and other requirements of work.[5]     *Compare, e.g.,*

*Saunders v. Astrue*, Civil Action No. 1:11cv308–WC, 2012 WL 997222, at *5 (M.D. Ala.

_____

[5]       In *Green*, such linkage was easily identified since the documentary evidence remaining after the ALJ properly gave less than controlling weight to the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication."   223 Fed. App'x at 923-24.   Based upon such nominal clinical findings, the court in Green found "substantial evidence support[ing] the ALJ's determination that Green could perform light work."   *Id.* at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green*, while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit.   In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

      Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **must—in all cases—include** an RFC or PCE from a physician.   *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added).   But, because the record in *Stephens*

      contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence.   [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart*, 293 F. Supp. 2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying."), *with* 20 C.F.R. § 416.945(b), (c) & (d).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision.  For example, in *Hanna*, the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.'  In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .

> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . .   [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .

> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work.   **But this conclusion is not clear from the record.**   The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation.   The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.   **The ALJ must state the grounds for his decision with clarity to enable us to conduct**

> **meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed. App'x at 635-36 (emphasis added and internal citations and footnotes omitted);

*see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27,

2012) ("'The existence of substantial evidence in the record favorable to the

Commissioner may not insulate the ALJ's determination from remand when he or she

does not provide a **sufficient rationale to link such evidence to the legal conclusions**

**reached**.' Where the district court cannot discern the basis for the Commissioner's

decision, a sentence-four remand may be appropriate to allow him to explain the basis

for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005))

(emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th

Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the

reviewing court with sufficient reasoning for determining that the proper legal analysis

has been conducted mandates reversal.") (citation omitted); *Dixon v. Astrue*, 312 Fed.

App'x 226, 229 (11th Cir. Fed. 13, 2009) (per curiam) (after noting,"'[w]hile we may not

supply a reasoned basis for [an] agency's action that the agency itself has not given, we

will uphold a decision of less than ideal clarity if the agency's path may reasonably be

discerned[,]'" vacating a district court's decision to affirm the ALJ where "the ALJ's path

[was] not reasonably discernible") (quoting *Zahnd v. Secretary, Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir. 2007)).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision.   *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . .   There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].   However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.   Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

    B.    <u>Analysis.</u>

In short, given the standard set forth above, the Court, in this case, must first determine whether the reasons articulated by the ALJ for not giving controlling weight the opinions of the treating sources are supported by substantial evidence.  *See, e.g., Thomas v. Astrue*, No. CA 11–0406–C, 2012 WL 1145211, at *9 (S.D. Ala. Apr. 5, 2012) ("Because the undersigned finds that the ALJ did not explicitly articulate an adequate reason, supported by substantial evidence, for rejecting a portion of [the treating physician's] PCE assessment, this Court must necessarily find that the ALJ's RFC determination is not supported by substantial evidence.").  If substantial evidence supports the reasons for not giving controlling weight to the treating source opinions articulated by the ALJ, the Court then must determine whether the ALJ's RFC assessment is linked to specific evidence in the record regarding the plaintiff's ability to perform the physical, mental, sensory, and other requirements of work.  If the ALJ's decision provides such linkage—that is, it gives this Court a sufficient rationale to link the remaining record evidence to her legal conclusions—the ALJ's decision is supported by substantial evidence and will be affirmed.

### 1.    Treating source opinions.

As one district court outside of this Circuit has recently put it:

> In every case, a treating physician will have greater access to the medical records, and more familiarity with the patient and his condition than will an examining physician or a physician who merely reviewed the record evidence.  This is the reason for the treating physician rule whereby greater deference is usually accorded to the opinion of a treating physician than the opinion of a physician who has only examined the patient one time or the opinion of a physician who has merely reviewed the medical

records.   This is the reason the courts require an ALJ to provide specific, legitimate reasons for discounting a treating physician's opinion.

*Vine v. Astrue*, Civil Action No. 09-2212-KHV-GBC, 2010 WL 2245079, at *11 (D. Kan. May 11, 2010) (internal citations omitted), *report & recommendation adopted*, 2010 WL 2245076 (D. Kan. June 2, 2010).   And the law in this Circuit is that

> [t]he opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).   Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."   *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.   *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert*, 396 Fed. App'x at 655.

a.   Dr. Fontana.

Dr. Fontana has treated the plaintiff since February, 2003.   Prior to the hearing before the ALJ, he completed both a clinical assessment of pain (R. 548), in August, 2009, and an arthritis RFC (R. 551-552), in November, 2009.   Dr. Fontana also completed a work capacity evaluation in May, 2010 (R. 554), which postdates the ALJ's determination, but was provided to the Appeals Council.   As to Dr. Fontana, the ALJ found:

> Dr. Fontana opined that the claimant has pain to such an extent as to be distracting to the adequate performance of work activities and that medication side effects can be expected to be severe and to limit the claimant's effectiveness due to distraction, inattention, drowsiness, etc (Exhibit 24F).   He opined that, based on the claimant's symptoms, he can

14

sit for [no] more than two hours at a time, and stand and/or walk for less than two hours in an eight hour workday.  He can lift and carry up to twenty pounds occasionally.  He must use a cane or other assistive device when engaging in occasional standing or walking.  Emotional factors contribute to the severity of the claimant's symptoms and functional limitations.  Pain is frequently severe enough to interfere with attention and concentration.  These assessments are inconsistent with the medical evidence of record, including Dr. Fontana's treatment of the claimant. Since the alleged onset of disability, Dr. Fontana has prescribed Tylenol #3 for the claimant's pain and nothing else, which is very conservative treatment and does not support a finding that the claimant has pain or limitations as severe as assessed.  Next, the objective findings from physical examination and objective testing have been minimal. Additionally, while the claimant mentioned side effects in the application documents, the treatment notes do not reflect that he has complained to his doctors of severe side effects from his regular medication.  Further, treatment notes show that the claimant is able walk without a cane (Exhibit 2F-19), which is contrary to Dr. Fontana's report.  Finally, Dr. Fontana's residual functional capacity assessment is internally inconsistent.  He stated that the claimant could stand for two hours at a time, but could only stand and/or walk for less than two hours in an eight hour workday. Also, I note that the questionnaire did not give an option for sitting, standing, or walking for more than four hours in an eight hour workday, therefore, leaving out the option to sit or stand and/or walk for six hours in an eight hour workday.  In light of the inconsistencies between the assessments and the objective evidence, Dr. Fontana's assessments are given little weight.

(R. 24)

While the Court takes issue with several reasons the ALJ articulated for giving

less than controlling weight to Dr. Fontana's opinions, because: (1) Dr. Fontana

characterized his treatment of the plaintiff's pain as "conservative" (*see, e.g.,* R. 560

(indicating that although the plaintiff complained of "worse pain recently" and there

were discussions regarding treatment options, including injections, the plaintiff elected

"to continue conservative treatment"); R. 568 (April 13, 2010 Letter in which Dr. Fontana

states that the plaintiff "has been treated conservatively for multiple orthopedic problems . . . .")); (2) Dr. Fontana's opinion that the plaintiff, "[w]hile engaging in occasional standing/walking, **must** . . . use a cane or other assistive device" (R. 552 (emphasis added) is neither consistent with other medical records (*see, e.g.*, R. 195 ("He uses a cane since 2001 off and on for support."); 197 ("He uses a cane.   Able to walk without a cane.   Gait normal.")) nor the plaintiff's own testimony (*see* R. 38 (stating that he last used his cane "[a] couple of months ago"), *see, e.g., Madison v. Astrue*, No. 08-1243-JTM, 2009 WL 1873811, at *5 (D. Kan. June 30, 2009) ("An ALJ may give less weight to the opinion of a physician when it is inconsistent with the other substantial evidence in the record.") (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007)); and (3) Dr. Fontana's opinion appears to be internally inconsistent in that it states that while the plaintiff can stand <u>continuously</u> for two hours, he can only "stand/walk" for less than two hours in an eight-hour workday (R. 551), the ALJ has provided adequate reasons, supported by substantial evidence, to discount Dr. Fontana's opinion(s).[6]

---

[6]     While the Commissioner concedes that the fifth reason given by the ALJ—that the structure of the questionnaire completed by Dr. Fontana left out the option to sit or stand and/or walk for six hours in an eight hour workday—is incorrect, the Court must also register some concerns regarding other reasons the ALJ provided to support her decision not to give controlling weight to Dr. Fontana's opinion.

First, while "[i]t is entirely appropriate for the ALJ to rely on the conservative nature of treatment in assessing the extent of impairment and . . . to discount [a] treating physician's conclusions[,]" *Beveridge v. Commissioner of Soc. Sec.*, No. 10–12883, 2011 WL 4407564, at *6 (E.D. Mich. July 18, 2011) (citing cases), contrary to the ALJ's finding that "[s]ince the alleged onset of disability[—March 12, 2008—]Dr. Fontana has prescribed Tylenol #3 for the claimant's pain and nothing else" (R. 24), it appears that, in 2009, Dr. Fontana prescribed both Tylenol #3 for mild pain and Lortab for moderate pain (*see* R. 555, 565).   Further, the plaintiff testified that he took Tylenol #3, Lortab, and Tramadol, which is used to relieve moderate to moderately severe pain.

(R. 42 ("I try to change them up but the Loratab [sic] is usually always for the most severe pain. And they make me nauseous so I, sometimes I just deal with the pain instead of . . . being nauseous.").) The Court realizes that while the treatment records cited pre-date the ALJ's decision, the ALJ did not have access to them prior to issuing her decision. The Appeals Council, however, did receive these records (*see* R. 4), and "[b]ecause it did not follow the procedure at 20 C.F.R. § 404.976(b)(1), [it] presumably concluded [that] all [ ] records submitted to them related to the alleged disability period decided by the ALJ," *Banks v. Apfel*, No. 98–4214–SAC, 2000 WL 1863382, at *1 n.1 (D. Kan. Nov. 13, 2000).

As to the asserted lack of physical examination and objective testing, "[i]t is improper to reject a treating physician's opinion based on lack of objective medical findings where he provided at least some objective observations and testing in addition to subjective opinions." *Rodriguez v. Astrue*, No. CV 08-3815-PLA, 2009 WL 2136296, at *7 (C.D. Cal. July 15, 2009) (citations omitted). Here, for example, eight of the 13 separate clinic notes authored by Dr. Fontana in the record at R. 166-178 contain a section titled "physical examination." All of those notes also contain a "subjective" section. A detailed physical examination finding also appears in Dr. Fontana's July 31, 2008 clinic note. (*See* R. 407-408.) Further, given Dr. Fontana's lengthy relationship with the plaintiff, it is worthwhile to note that the United States Court of Appeals for Veterans Claims has held—and this Court thinks it is obvious—that "there are other means by which a private physician can become aware of critical medical facts, not the least of which is by treating the claimant for an extended period of time[.]" *Cohen v. Shinseki*, No. 09–3769, 2011 WL 2636968, at *5 (Vet. App. July 6, 2011) (citation omitted).

Finally, the Court must address the ALJ's reason that "while the claimant mentioned side effects in the application documents, the treatment notes do not reflect that he has complained to his doctors of severe side effects from his regular medication" (R. 24), which was articulated to discredit Dr. Fontana's pain assessment (R. 548), in which Dr. Fontana noted that "[m]edication side effects can be expected to be severe." First, the claimant testified that his Lortab "makes [him] nauseous." (R. 42.) Second, this Court's review of the medical records from the VA reveals that those records are replete with notes regarding side effects from medication. His claim is, moreover, explicitly noted in Dr. Fontana's records (R. 565), included in evidence submitted to the Appeals Council, which it "presumably concluded [was applicable to the] alleged disability period decided by the ALJ" by not following § 404.976(b)(1), *Banks*, 2000 WL 1863382, at *1 n.1. Moreover, unlike where a plaintiff's claim regarding alleged side effects from his medications is rejected by an ALJ because the ALJ finds "that there was no notation in [the physician's] records indicating either that [the plaintiff] complained that his medications were causing side effects or that [the physician] believed that the medications were causing the symptoms complained of by [the plaintiff] in his hearing[,]" *Carter v. Commissioner of Soc. Sec.*, 411 Fed. App'x 295, 297 (11th Cir. Feb. 1, 2011) (per curiam), a treating physician's **own opinion**—expressed in a pain assessment—that medication side effects can be expected to be severe should not be given less weight because the ALJ finds that a plaintiff's medical records, unlike **this** plaintiff's medical records, did not contain a specific complaint regarding the side effects. *See Ryan v. Commissioner of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by

b.      Dr. Howard.

Dr. Robert Howard's treatment of the plaintiff for fibromyalgia is well-established in the record.   (*See, e.g.*, R. 468-471, 500-503, 536-539, 598-601, 658-662, 696-699 (treatment notes from November, 2008 through May, 2010).)   Dr. Howard completed a fibromyalgia RFC questionnaire in October, 2009 (R. 549-550; *see also* R. 696-699 (treatment note stating that the plaintiff requested that Dr. Howard fill out a medical disability form)), in which, as set out in the ALJ's decision, Dr. Howard

> stated that the claimant meets the American Rheumatological criteria for fibromyalgia, but[, according to the ALJ,] the medical evidence of record does not confirm this.   He opined that the claimant's pain will frequently interfere with attention and concentration.   He has a severe limitation in his ability to deal with work stress.   He can sit for one hour at a time and four hours in an eight hour workday.   He can stand for forty five minutes at a time and stand and/or walk for about two hours in an eight hour workday.   He can lift and carry up to twenty pounds occasionally.

(R. 25.)

The ALJ found the plaintiff's fibromyalgia, in isolation, to be non-severe[7] (R. 18 (stating, in part, that although the plaintiff has been diagnosed with fibromyalgia, as well as other ailments, "[h]e is under appropriate medical care for the stated conditions,

---

questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.") (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)); *cf. Birdwell v. Barnhart*, No. 2:06-0063, 2008 WL 2414828, at *13 (M.D. Tenn. June 12, 2008) (remanding an ALJ's decision that "insufficiently explained . . . the relevance of Plaintiff's credibility to the evaluation of [treating] medical source opinions under 20 C.F.R. § 416.927(d)(2)-(6)").

[7]       Although "fibromyalgia [is] an impairment which, not surprisingly, is routinely recognized as a severe impairment[,]" *Jiles v. Astrue*, No. CA 07-0718-C, 2008 WL 2225780, at *4 (S.D. Ala. May 23, 2008) (collecting cases), the plaintiff, on appeal, does not take issue with this finding.

all of which are apparently stable and under control.   There is no indication of on-going symptoms, complications, or end-organ damage.   These conditions will be considered in combination with the severe impairments."")), and also stated the following in her decision regarding the plaintiff's fibromyalgia:

> The claimant was [ ] diagnosed with fibromyalgia in February 2007 (Exhibit 18F).   All fibromyalgia points were positive on examination, but he has received very little treatment for this condition.   The claimant continued to work with the fibromyalgia and there is no evidence that the fibromyalgia has worsened since the claimant worked full time. Although, I have found that the fibromyalgia is non-severe, I have considered the effects of this condition when determining the residual functional capacity: specifically, the residual functional capacity resulting from the arthritis.   The fibromyalgia does not cause any additional limitations that [sic] those identified above resulting from the arthritis.

(R. 22.)

As the Sixth Circuit has explained, "a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits; particularly so [ ] where there is substantial evidence to support the ALJ's determination that [the claimant's] fibromyalgia was either improving or, at worst, stable."   *Vance v. Commissioner of Soc. Sec.*, 260 Fed. App'x 801, 806 (6th Cir. Jan. 15, 2008) (citing *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)).   The task for the ALJ is to consider the plaintiff's work-related limitations due to fibromyalgia.   And this Court's role is limited to determining whether the ALJ's resultant findings are supported by substantial

evidence.  *Davison*, 370 Fed. App'x at 996; *see, e.g., Harmon v. Astrue*, No. 5:09CV2765, 2011 WL 834138, at *4 (N.D. Ohio Feb. 8, 2011) (recommending that the Court find that substantial evidence supports the ALJ's decision where the ALJ considered the effects of fibromyalgia on the RFC, including "that there was little evidence of treatment for fibromyalgia, and neither [the] examining physician . . . nor Plaintiff's primary care physician [ ] indicated that Plaintiff ha[d] work related limitations due to fibromyalgia") (citing *Howard v. Commissioner of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) ("RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from")), *report & recommendation adopted*, 2011 WL 825710 (N.D. Ohio Mar. 4, 2011).

Although, here, Dr. Howard found that the plaintiff had work-related limitations due to fibromyalgia (*see* R. 549-550), the Court finds that the ALJ has provided adequate reasons, supported by substantial evidence, to give less than controlling weight to Dr. Howard's opinion(s).  First, the ALJ noted that the plaintiff has received very little treatment for fibromyalgia and, while he was diagnosed in February, 2007, he continued to work.   This reason is supported by Dr. Howard's treatment notes, which reflect that he saw the plaintiff every several months.  (*Compare* R. 500-503 (March, 2009 (noting that "all fibromyalgia tender points are positive" and that sarcoidosis is "normal, stable")), *with* R. 536-539 (June, 2009 (noting "no new concerns")), *with* R. 696-699 (October, 2009 (noting that the plaintiff "requests that I fill out a medical disability form")), *with* R. 658-662 (March, 2010), *with* R. 598-601 (May, 2010 (noting that, with

regards to fibromyalgia, plaintiff obtains "relief from tramadol")).)   *Cf. Smith v. Astrue*, No. 4:07-cv-0103-SEB-WGH, 2008 WL 3982067, at *3 (S.D. Ind. Aug. 22, 2008) (concluding that the ALJ's determination to give less than controlling weight to a treating physician's opinion—"because the limitations Dr. Fineman assessed were inconsistent with the level of treatment provided, the lack of prescribed pain medications, and Smith's account of her daily activities"—was "supported by substantial evidence").   The ALJ's second reason—that there was no evidence that the plaintiff's fibromyalgia has worsened—is also supported by the record.   (*See* R. 598-601, 536-539, 500-503.)   *Cf. Coryea v. Commissioner of Soc. Sec.*, Civil Action No. 07-01210, 2008 WL 4279809, at *7 (W.D. Pa. Sep. 16, 2008) (concluding that the ALJ's finding that the plaintiff's fibromyalgia was not disabling was supported by substantial evidence where the record indicated that "although Plaintiff suffers from fibromyalgia and rheumatoid arthritis, those conditions are stable with medication").   Moreover, in support of the ALJ's finding that "[t]here is no evidence that the claimant cannot sit for six hours in an eight hour workday," contravening Dr. Howard's opinion, Dr. Fontana indicated in the work capacity evaluation he completed in May, 2010 (R. 554), which was presented to the Appeals Council, that the plaintiff **is** able to sit for eight hours.

c.    Dr. Sackheim.

The plaintiff submitted medical evidence (office visit notes from May and June, 2008) and a physical capacities evaluation, dated August 26, 2008, from Dr. Robert Sackheim.   (*See* R. 411-414.)   As to Dr. Sackheim, the ALJ only rejected that portion of

his opinion regarding the plaintiff's inability to "sit for more than two hours in an eight hour workday."   (R. 24.)   The ALJ then went on to recognize that "[t]he remainder of [his] opinion is not inconsistent with the medical evidence of record or the residual functional capacity and is given great weight."   (*Id.*)   As stated, immediately above, the portion of Dr. Sackheim's opinion rejected by the ALJ is at odds with Dr. Fontana's May, 2010 Evaluation, concluding that the plaintiff **is** able to sit for eight hours.   (*See* R. 554.) And, as stated by the court in *Clore v. Astrue*, Civil Action No. 1:08CV77-J, 2009 WL 1010875 (W.D. Ky. Apr. 14, 2009), "[a] treating source medical opinion is entitled to controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,'" *id.* at *4   (quoting 20 C.F.R. § 404.1527(d)(2)).

> One "obvious inconsistency [is] when two medical sources provide inconsistent medical opinions about the same issue."   Social Security Ruling (SSR) 96-2p.   The [Court] concludes that, in light of the obvious inconsistency between the opinions of the treating sources, the ALJ was not required to give controlling weight to Dr. [Sackheim's] [sitting limitation].   Instead, the ALJ[, as affirmed by the Appeals Council,] could have given controlling weight to Dr. [Fontana's] [sitting limitation, or lack thereof].

*Id.*

## 2.    Substantial evidence supports the ALJ's RFC determination.

Having found that substantial evidence supports the ALJ's reasons for giving less than controlling weight to the treating source opinions authored by Drs. Fontana and Howard (R. 551-552 and R. 549-550, respectively) and a portion of the treating source

opinion authored by Dr. Sackheim (R. 412),[8] the Court now turns to whether the ALJ has provided the Court with a sufficient rationale to link the remaining record evidence to her RFC, which is:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b).   He cannot stand or walk for more than thirty minutes at a time or more than two hours in an eight hour workday.   He can perform jobs with short, simple instructions, but cannot perform jobs with complex or detailed job instructions.   He is limited to rarely reaching overhead.   He can frequently reach at waist or bench height.   He is limited to no more than occasionally operating foot controls, climbing stairs and ramps, bending, stooping, or crouching.   He cannot climb ladders or scaffolds, kneel, or crawl.

(R. 20.)

Because the Court concludes that the ALJ's RFC assessment is linked to specific evidence in the record regarding the plaintiff's ability to perform the physical, mental, sensory, and other requirements of work, her decision is supported by substantial evidence.   The ALJ first discusses the record evidence—including the objective findings and treatment history—concerning the plaintiff's arthritis (R. 21-22), and provides an assessment of limitations "[b]ased on the mild objective findings and the very

---

[8]      In addition to explaining the weight she gave the treating source opinions, as examined in this order, the ALJ also explained the weight she gave the plaintiff's pain testimony—after performing the requisite credibility analysis, *see, e.g., Minor v. Astrue*, No. CA 10–605–C, 2011 WL 2621069, at *2 (S.D. Ala. July 5, 2011) ("When an ALJ rejects pain testimony, there must be an explanation of the rationale for finding a plaintiff not credible.   Moreover, if an ALJ fails to explicitly discredit the subjective testimony of a plaintiff concerning pain—giving reasons for that decision—the Eleventh Circuit has held that the pain testimony must be accepted as true as a matter of law.") (citations omitted)—the assessed GAF score, and the VA's disability determination (*see* R. 23-25); none of these determinations by the ALJ are challenged on appeal.

conservative and routine treatment that the claimant has received" (R. 22).   The ALJ then moves on to the plaintiff's fibromyalgia, which, as stated previously, she concluded did "not cause any additional limitations [than] those identified [ ] resulting from the arthritis."   (R. 22.)   She then turns to the plaintiff's sarcoidosis and, after noting that the plaintiff had not received treatment for that condition in approximately one year (based on his own testimony), concludes that, when considered with the plaintiff's arthritis, his sarcoidosis does not impose additional limitations but was considered in her setting out his physical limitations.   (R. 22-23.)   Next, she considers the effects of his depression and the side effects of his medication and explains how those impact to the RFC assessment.   (R. 23.)   In formulating the RFC assessment, as to each asserted disability, the ALJ cited to specific evidence to explain how, and to what extent, each claimed disability affects the plaintiff's ability to meet either the physical, mental, sensory, or other requirements of work.   Thus, the ALJ has provided the linkage necessary for this Court to conduct a meaningful review and affirm that her legal conclusions are supported by substantial evidence.   *See Hanna*, 395 Fed. App'x at 635-36; *Ricks*, 2012 WL 1020428, at *9.

Further, that the ALJ, after properly discounting the opinions, in part, of the treating sources, relied on the medical and other record evidence, including the treating sources' own records (even comparing treating opinions/records against each other), is entirely proper.   *See, e.g., Casey v. Astrue*, 503 F.3d 687, 691-93 (8th Cir. 2007) (initially noting that "[t]he ALJ had a duty to evaluate the medical evidence as a whole[,] then that

it was "important to note that contrary to [the plainitff's] suggestion, the ALJ did not reject all of [his treating rheumatologist,] Dr. Rettenmaier's opinions.   The ALJ discussed and gave weight to Dr. Rettenmaier's treatment records of December 2001 to May 2004.   The ALJ only refused to give weight to Dr. Rettenmaier's opinion expressed in a Fibromyalgia RFC Questionnaire completed in July 2004[,]" and, finally, that it is acceptable to contrast the treating medical source's "opinion with the medical records of other treating physicians"); *Armijo v. Astrue*, Civil Action No. 08-cv-02150-CMA, 2009 WL 1580319, at *10 (D. Colo. June 2, 2009) (affirming ALJ's decision to deny benefits after initially noting that it was "somewhat troubled by the ALJ's decision to discredit the opinion of the only substantial treating medical source in the records.   However, [like here,] the ALJ did not totally reject [his] opinions; the ALJ merely declined to give weight to certain purported functional limitations that [he] found Plaintiff to possess, while, at the same time, adopting other more objective components of [his] treating records to arrive at [the] RFC assessment, e.g., the nerve function test and MRI results. Thus, the Court ultimately conclude[d] that ALJ acted within his province in declining to give controlling weight to [the treating medical source's] opinions."); *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 736-37 (E.D. Pa. 2005) ("It bears noting that the ALJ did not reject Dr. Blender's opinions outright, but rather accepted them to the extent they were supported by his own treatment notes and objective findings, and the record evidence as a whole.   The ALJ was entitled to afford Dr. Blender's opinions less weight in view of the lack of support for them and the record evidence to the contrary.   The ALJ properly

considered all the medical evidence and concluded that plaintiff has the RFC to perform a limited range of light work. For the foregoing reasons, this conclusion is supported by substantial evidence.") (internal citation omitted); *cf. Brihn*, 582 F. Supp. 2d at 1100 ("Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.") (citing *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005)).

## Conclusion

Because the Court finds that substantial evidence supports both the ALJ's reasons for giving less than controlling weight to the treating source opinions and her RFC assessment, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be **AFFIRMED**.

**DONE** this the 30th day of April, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**